### 1554

Julia B. FIBKINS, Plaintiff, v. Carl E. FIBKINS, City Federal Savings Bank, First Maryland Savings And Loan, Inc., By And Through The State Of Maryland Deposit Insurance Fund Corporation, As Receiver, First South Savings Bank, United Capital Corporation, Henry Yaschik, Southern National Bank And Harold I. Sherman, Defendants, Of Whom First Maryland Savings and Loan, Inc., By and Through The State Of Maryland Deposit Insurance Fund Corporation, As Receiver, Is Appellant, And City Federal Savings Bank is, Respondent. Appeal of FIRST MARYLAND SAVINGS AND LOAN, INC., By and Through the STATE OF MARYLAND DEPOSIT INSURANCE FUND CORPORATION, as Receiver.

(399 S.E. (2d) 158)

Court of Appeals

*Morris A. Ellison* and *Henry B. Smythe* of *Buist, Moore, Smythe & McGee,* Charleston, *Jeffrey D. Herschman* of *Piper*

*& Marbury,* Baltimore, Md., and *Thornwell F. Sowell* of *Nelson, Mullins, Riley & Scarborough,* Columbia, *for appellant.*

*Andrew K. Epting, Jr.,* and *Dennis J. Christensen* of *Wise & Cole,* Charleston, *for respondent.*

Heard Sept. 17, 1990.

Decided Oct. 22, 1990.

Cert. Den. Jan. 23, 1991.

CURETON, Judge:

This case involves the priority of liens of the parties in a mortgage foreclosure action. The master held City Federal Savings Bank had priority over First Maryland Savings and Loan based upon "principles of equity and the doctrine of unclean hands." The circuit court judge affirmed the master on appeal. First Maryland appeals the decision of the circuit court. We affirm.

## FACTUAL BACKGROUND

The case arises from the relationship of City Federal and First Maryland with Cambridge Mortgage Corporation. Cambridge Mortgage was a mortgage broker in South Carolina. First Maryland provided a warehouse line of credit for Cambridge. First Maryland encountered financial difficulties and the state of Maryland appointed a receiver to operate it. Due to its financial problems, First Maryland was unable to adequately service the warehouse line of credit for Cambridge. An officer of City Federal testified he was contacted by a loan originator for First Maryland in August of 1985 about City Federal extending a line of credit to Cambridge. City Federal had no previous business relationship with Cambridge. After an inquiry into the financial status of Cambridge, City Federal agreed to a five million dollar line of credit. Officials of City Federal testified the relationship proceeded smoothly into 1986. At that time, Cambridge requested an increase in the City Federal line of credit to the sum of ten million dollars. The vice-president of City Federal testified he contacted the conservator of First Maryland to inquire about the lending relationship between Cambridge and First Maryland. He was assured by the conservator the relationship was good.

First Maryland also agreed to provide a one million dollar irrevocable letter of credit to City Federal as security for the increase in the line of credit for Cambridge. City Federal accordingly increased its line of credit to Cambridge.

During the latter part of 1986, First Maryland filed suit against Cambridge Mortgage and some of its principals in a Maryland court. One of the many allegations of the suit was that $125,000 from First Maryland had been improperly diverted by principals of Cambridge to the purchase of certain property in Charleston. This event and other problems with the Cambridge-First Maryland relationship had occurred during 1985 and 1986. Beginning in November, 1986, First Maryland filed a succession of lis pendens notices in Charleston County. However, litigation was not commenced in South Carolina until October of 1987 when First Maryland filed suit to establish an equitable lien on the real estate alleging its funds had been diverted to purchase the property. The explanation for the delay in instituting suit in South Carolina was ongoing negotiations to resolve the various financial disputes between First Maryland and Cambridge.

Cambridge Mortgage defaulted under its warehouse loan agreement with City Federal in September of 1987. City Federal took a mortgage on October 2, 1987, on the same piece of property on which First Maryland claimed an equitable lien.

It is not necessary to explain the full background of the property in question. Suffice it to say there were several parties who claimed an interest in this real estate. There was a foreclosure of a first mortgage. City Federal and First Maryland were parties to the foreclosure action. The issue between them was who had second priority.

The master found First Maryland had an equitable lien on the property. However, the master also found First Maryland should have third priority because of misrepresentations First Maryland made to City Federal which induced City Federal to enter into and increase its warehouse line of credit to Cambridge Mortgage. On appeal, the circuit court affirmed the master.

## DISCUSSION OF ISSUES

First Maryland's primary argument is City Federal filed its mortgage with actual notice of First Maryland's lis pendens

and therefore First Maryland's equitable lien has priority under *S.C. Code Ann.* Section 15-11-20 (1977). First Maryland filed a lis pendens every twenty days beginning in November 1986 but never instituted suit until early October 1987. The latest lis pendens was filed in September of 1987. City Federal's mortgage was filed a few days before First Maryland filed its complaint relating to the September lis pendens. The witness for City Federal admitted the bank conducted a title search and had actual notice of the lis pendens when the mortgage was taken and filed.

The master's decision, confirmed by the circuit court, granted priority to City Federal due to inequitable conduct by First Maryland. First Maryland argues as a matter of law the master cannot reorder the priorities established by Section 15-11-20. Neither the master nor the circuit court explicitly stated First Maryland would have priority over City Federal absent the finding of inequitable conduct but this conclusion is implicit. Otherwise, the issue of inequitable conduct by First Maryland would be of no consequence.

An action to establish an equitable lien is an action in equity. *Swearingen v. Hartford Fire Ins. Co.*, 56 S.C. 355, 34 S.E. 449 (1899). Similarly, an action to establish lien priorities is equitable. *Dana v. Peurifoy*, 142 S.C. 46, 140 S.E. 247 (1927). First Maryland invoked the equity jurisdiction of the court when it sought to have its lien judicially recognized and its priority established. By the same token, an action to foreclose a mortgage is an action in equity. *Continental Mtg. Investors v. Quail Run Associates*, 280 S.C. 409, 312 S.E. (2d) 272 (Ct. App. 1984.) Therefore, City Federal also submitted to the equity powers of the court when it sought to foreclose its mortgage.

An equitable lien is "neither an estate or property in the thing itself, nor a right to recover the thing, but is simply a right of a special nature over the thing, which constitutes a charge upon the thing. . . ." *Carolina Attractions, Inc. v. Courtney*, 287 S.C. 140, 145, 337 S.E. (2d) 244, 247 (Ct. App. 1985). An equitable lien is a "mere floating equity until a judgment or decree subjecting the property to the payment of the debt or claim is rendered, but even though not judicially recognized until a judgment declaring its existence, it relates back to the time it was created by the conduct of the parties." 51 Am. Jur. (2d) *Liens* Section 22 at 161 (1970).

The master in equity had authority to reorder the priorities of the mortgage and the equitable lien based upon his findings concerning the conduct of the parties.[1] 51 Am. Jur. (2d) *Liens* Section 58 (1970); see *Trustees of Frazier v. Center*, 6 S.C. Eq. (1 McCord Eq.) 270 (1826). Upon hearing the testimony and reviewing the exhibits, the master found First Maryland made representations to City Federal concerning Cambridge Mortgage which misled City Federal. An official of City Federal testified the financial institution would not have extended the lines of credit if it had been apprised of the problems with and the delinquency of Cambridge Mortgage in its obligations to First Maryland.

First Maryland argues certain findings of fact in the master's order are not supported by the record.[2] There were issues of witness credibility to be resolved in the testimony and the master resolved those against First Maryland. Numerous exhibits were introduced including pleadings and motions filed in the state of Maryland dealing with the reorganization of First Maryland and its litigation with Cambridge. The master utilized not only the testimony but also these exhibits in his findings. The circuit court affirmed the master on appeal. We may only review concurrent findings of fact by the master and circuit judge for a determination of whether they are without evidentiary support. *Townes Associates Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E. (2d) 773 (1976). This court will not reweigh the evidence.

First Maryland also argues the master had no jurisdiction to issue his order of September 28, 1988, because the case was already under appeal pursuant to a July 13, 1988 order, issued by the master. We find no merit to this argument. The master's order of July 13 clearly indicated it was an interim order and a final order would be issued once a transcript was received. The July order stated it was issued only to facilitate scheduled bidding. The July 13 order was interlocutory and

[1] Although not stated by the master, it is implicit he intended First Maryland's third place priority to be a condition of the judicial recognition of the equitable lien.

[2] One of the challenged findings is an award of attorney fees. First Maryland's argument consists of one sentence in its brief. We view this specific argument as effectively abandoned. *American Federal Bank FSB v. Parker*, ___ S.C. ___ , 392 S.E. (2d) 798 (Ct. App. 1990).

did not stay proceedings in the master's court. *S.C. Public Serv. Auth. v. Arnold,* 287 S.C. 584, 340 S.E. (2d) 535 (1986). Thus, the master was empowered to enter the September 28 order which provided the detailed findings of fact and conclusions of law. It is clearly the final appealable order in the case.

Affirmed.

